[Cite as *State v. Pulley*, 2020-Ohio-6898.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-12-200 |
| - vs - | : | O P I N I O N<br>12/28/2020 |
| | : | |
| JACOB D. PULLEY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 19CRB02720-A

Neal D. Schuett, City of Hamilton Prosecuting Attorney, 345 High Street, Hamilton, Ohio 45011, for appellee

Christopher P. Frederick, 300 High Street, Suite 550, Hamilton, Ohio 45011, for appellant

**HENDRICKSON, P.J.**

{¶1} Appellant, Jacob D. Pulley, appeals from the decision of the Hamilton Municipal Court ordering him to pay $1,389.80 in restitution following his conviction for criminal damaging. For the reasons discussed below, we affirm the court's restitution order.

{¶2} On March 22, 2019, appellant was charged by complaint with criminal damaging in violation of R.C. 2909.06, a misdemeanor of the second degree. On

September 3, 2019, appellant pled no contest to the charge, thereby admitting to the following facts:

> [O]n or about February 17, 2019, Jacob Pulley caused damage to the bathroom door of Andrew Grenier and Kasey O'Donnel's home, also damage to the kitchen cabinets. Said acts occurred in Ross Township – Ross Township, Butler County, Ohio. * * * Mr. Pulley threw an open bottle of red hand sanitizer all over the freshly painted white kitchen cabinets, ruining them. Then went upstairs, punched two holes in the bathroom door.

{¶3} The trial court accepted appellant's no contest plea and found him guilty of criminal damaging. The court then turned to sentencing and the issue of restitution. Appellant stipulated to $269.80 as restitution for damage to the bathroom door. However, the amount of restitution for damage to the kitchen cabinets was disputed. Grenier and O'Donnel sought $1,120 in damages for repairs to their cabinets. According to Grenier, the cabinets had recently been painted white and the red-dye hand sanitizer appellant threw "soaked in immediately" and was unable to be removed. The cabinets, therefore, had to be scraped clean and repainted. Grenier stated that eight different cabinets had been damaged by the red-dyed hand sanitizer appellant threw. O'Donnel believed there were "at least eight to ten" doors that had been damaged.

{¶4} Appellant disputed that eight or more cabinets had been damaged by his actions. He argued that photographs taken at the scene showed damage only to "two double cabinets." He further disputed that he should be responsible for paying for a polyurethane topcoat that had been put over top of the repaired and repainted cabinets, contending that the polyurethane topcoat had not been on the white cabinets at the time he threw the hand sanitizer. During the hearing, appellant asked an investigating officer, Detective Johnson, how many cabinets were damaged. Johnson indicated she had not responded to the scene, but someone else "was there" who might be able to answer. This

person, who was unidentified in the record, recalled four cabinets being damaged.[1]

{¶5} Due to the dispute over cabinet damages, the trial court continued sentencing and set the matter for a restitution hearing. The restitution hearing commenced on September 26, 2019. At this time, defense counsel referenced a restitution memorandum that he had filed with the court the day before the hearing. In the memorandum, appellant took issue with a $1,120 estimate Grenier and O'Donnel received from N-Hance Revolutionary Wood Renewal ("N-Hance") for the repair of 16 kitchen cabinets and challenged whether he should have to pay for the application of the polyurethane topcoat. As neither the state nor the court had seen the memorandum before the restitution hearing, the court continued the matter to give everyone time to review the filing.

{¶6} The hearing reconvened on October 17, 2019. At that time, Grenier and O'Donnel informed the court that 16 of their 24 kitchen cabinets had been damaged by appellant and had to be repainted. Grenier and O'Donnel presented a receipt from N-Hance showing that 16 cabinets were cleaned, sanded, and repainted at an amount of $70 per cabinet, for a total of $1,120. Grenier and O'Donnel also presented a receipt from the original project – when they paid to have all 24 cabinets painted and finished prior to appellant splashing red hand sanitizer all over them. That invoice indicated Grenier and

---

1. When discussing damages at the September 3, 2019 hearing, the following discussion took place:

> [DEFENSE COUNSEL]: Well, I think I would ask Detective Johnson whether that is the case or not, because she investigated the crime.
>
> THE COURT: Well, you can ask her, but I don't think they're lying about how many of their cabinets got splashed, but you can go ahead and ask her if you like.
>
> [DEFENSE COUNSEL]: How many cabinets were damaged.
>
> DETECTIVE JOHNSON: I did not respond to the scene. (TAPE INAUDIBLE). He was there.
>
> THE COURT: Do you know how many?
>
> UNIDENTIFIED SPEAKER: I remember four, Your Honor.

O'Donnel paid $130 per cabinet, with a 7.00 percent discount, for a total of $2,901.60 for work on all 24 cabinets.

{¶7} Appellant did not present any witnesses to rebut Grenier's and O'Donnel's assertions that 16 cabinets were damaged and had to be repainted. He again referred to photographs taken at the scene, which he argued showed damage to only two double cabinets. He also argued O'Donnel and Grenier's claim about the amount of cabinets damaged consistently changed and that law enforcement had indicated only two cabinets had been damaged.

{¶8} The trial court ultimately rejected appellant's assertion that O'Donnel's and Grenier's claims had changed, stating, "You know what, I don't think they've changed their story at all. They've been here, I don't think they've said anything other than exactly what happened." The court concluded that O'Donnel and Grenier had established damages to 16 kitchen cabinets in the amount of $1,120. The trial court therefore ordered appellant to pay a total of $1,389.80 in restitution for damages to the bathroom door and kitchen cabinets. The court then sentenced appellant to 90 days in jail, with all 90 days stayed, and to two years of community control.

{¶9} Appellant timely appealed, raising the following as his sole assignment of error:

{¶10} THE TRIAL COURT ERRED WHEN IT ORDERED [APPELLANT] TO PAY A TOTAL OF ONE THOUSAND THREE HUNDRED EIGHTY-NINE AND 80/100 ($1,389.80) DOLLARS IN RESTITUTION.

{¶11} Appellant concedes the order of $269.80 in restitution for damages caused to the bathroom door was proper but argues that the court erred when it ordered him to pay $1,120 in restitution for damages to the kitchen cabinets. Appellant contends the economic loss to the kitchen cabinets was not determined to a reasonable degree of certainty as there

were conflicting statements about how many cabinets were damaged and the invoice from N-Hance failed to set forth an itemized cost for each of the services it performed, such as cleaning, sanding, painting, and applying a polyurethane topcoat. Appellant maintains that he should only be responsible for repairs to two cabinets and that the damage award should not include any sum for the application of a polyurethane topcoat.

{¶12} "Regarding financial sanctions for a misdemeanor offense, R.C. 2929.28(A)(1) states that the trial court may impose one or more financial sanctions, including, but not limited to, restitution by the offender to the victim of the offender's crime * * *, in an amount based on the victim's economic loss." *State v. Eller*, 197 Ohio App.3d 738, 2012-Ohio-546, ¶ 12 (12th Dist.), citing R.C. 2929.28(A)(1). If a court imposes restitution, the court must determine the amount to be paid by the offender and may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates, or receipts indicating the cost of repairing or replacing property, and any other information, provided that the amount the court orders as restitution does not exceed the amount of economic loss suffered by the victim as a direct and proximate result of the offender's commission of the offense. *Id.* at ¶ 13; R.C. 2929.28(A)(1).

{¶13} "If the court decides to impose restitution, the court must hold an evidentiary hearing on restitution if the offender, victim, or survivor disputes the amount of restitution." *Id.* at ¶ 14, citing R.C. 2929.28(A)(1). At that hearing, the victim has the burden to prove by a preponderance of the evidence the amount of restitution sought from the offender. *Id.* An appellate court reviews a trial court's order of restitution in misdemeanor cases under an abuse-of-discretion standard of review. *Id.* at ¶ 16; *State v. Powell*, 12th Dist. Butler No. CA2010-09-257, 2011-Ohio-3906, ¶ 10; *State v. Guthrie*, 1st Dist. Hamilton No. C-180661, 2020-Ohio-501, ¶ 15.

{¶14} Contrary to appellant's arguments, the victims in this case proved by a preponderance of the evidence that they were entitled to $1,120 for repairs to their kitchen cabinets. By pleading no contest, appellant admitted to throwing "an open bottle of red hand sanitizer all over the freshly painted white kitchen cabinets, ruining them." Through their statements and the estimate from N-Hance, Grenier and O'Donnel provided competent, credible evidence establishing that 16 of their 24 cabinets were ruined by the hand sanitizer and the company hired to repair the damage, N-Hance, charged $1,120 to return the cabinets to their original condition. The fact that the N-Hance estimate did not spell out how much of the $1,200 was apportioned to cleaning, sanding, painting, or applying a topcoat finish did not make the estimate unreliable. The estimate provided that the process of repairing the cabinets cost $70 for each cabinet, for a total of $1,120. This was significantly below the $130 per cabinet Grenier and O'Donnel paid when they originally had the cabinets remodeled and painted.

{¶15} "R.C. 2929.28 permits the admission of 'estimates or receipts indicating the cost of repairing or replacing the property.' There is no indication the statute requires the preparer of the estimate to be present or cross-examined." *Powell*, 2011-Ohio-3906 at ¶ 9. The N-Hance estimate, if found credible by the court, was a sufficient basis for the court issue the restitution award.

{¶16} Furthermore, though appellant maintains only two double cabinets were harmed by his actions, his claims are contradicted by the N-Hance estimate and Grenier's and O'Donnel's representations to the court that 16 of their cabinets were damaged. Throughout the record, there appeared to be different manners in which the parties referred to the kitchen cabinets – sometimes the cabinets were referred to as single cabinets, other times as "double cabinets," and at times the cabinets were referred to by the number of doors they contained. The trial court considered the different manners in which the cabinets

Butler CA2019-12-200

were described, asked clarifying questions of Grenier and O'Donnel, and ultimately determined that "there were a total of 16 cabinets, we've previously referred to them, I think, as eight, but a total of 16, and I'm finding that they were all damaged and that it was part of what the Complaint said, which was damage to the kitchen cabinets, and it's a direct economic loss related to this incident." In finding that there was a total of 16 cabinets damaged by appellant's actions, the court was entitled to rely on Grenier's and O'Donnel's statements.

{¶17} Finally, with respect to the polyurethane topcoat, Grenier and O'Donnel established that application of the topcoat to the damaged cabinets was necessary to fully repair the cabinets. Though appellant submitted a memorandum in which he challenged whether the damaged cabinets had previously received a polyurethane topcoat, the trial court was not persuaded by appellant's sentencing memorandum or arguments. Rather, relying on Grenier's and O'Donnel's statements and the N-Hance estimate, the court found application of the polyurethane topcoat was part of what was required to return the cabinets to their original condition. Based on the record before us, we cannot say the court abused its discretion in reaching this decision or in ordering appellant to pay $1,120 for damages to the cabinets.

{¶18} Accordingly, we find that Grenier and O'Donnel proved by a preponderance of the evidence the amount of restitution sought. The trial court did not err in ordering appellant to pay a total of $1,389.80 in restitution for the damages he caused to Grenier's and O'Donnel's kitchen cabinets and bathroom door. Appellant's assignment of error is overruled.

{¶19} Judgment affirmed.

S. POWELL and RINGLAND, JJ., concur.

- 7 -